UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES F. WARREN,

                 Petitioner,              **MEMORANDUM AND ORDER**
                                         06-CV-1423 (RRM)
      - against -

GLENN GOORD, COMMISSIONER,
NEW YORK DOCS,

                 Respondent.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

Pending before this Court is petitioner James Warren's *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner seeks relief from his February 11, 2003 conviction in the New York Supreme Court, Nassau County, for sixty-three counts of kidnapping, rape in the first and third degrees, sodomy in the first and third degrees, assault in the second degree, assault in the third degree, and endangering the welfare of a child. (Trial Tr. at 1494-1504.) He was sentenced to multiple concurrent and consecutive terms of imprisonment, with an aggregate term of imprisonment of one hundred and fifty years to life. (Sent. Tr. at 17-34.)

In his petition, Warren sets forth seven grounds for relief, which contain fifteen separate claims of error.[1] They are as follows: (1) there was no reason to arrest petitioner on August 1, 2001 because no one spoke to his accomplice, Beth Loschin, until August 11, 2011 (ground one) (Pet. at 5); (2) the police ignored or destroyed allegedly exculpatory evidence found in petitioner's pocket, consisting of train ticket stubs indicating that he was regularly commuting 100 miles daily to work and therefore "was not present to commit any crime" (ground seven)

---

[1] None of petitioner's *pro se* papers (save one) contain page numbers. Page numbers to the federal petition are taken from the heading provided by Electronic Case Filing (ECF). Page numbers for all of petitioner's numerous *pro se* motions have been added by the Court based on the documents provided in the state court record.

(Pet. at 10); (3) the police ignored petitioner's requests for counsel (ground one) (Pet. at 5); (4) Ms. Loschin's confession was unlawfully obtained through coercion (grounds six and seven) (Pet. at 6, 11); (5) petitioner was deprived of statements allegedly made to the police by Ms. Loschin, in violation of *People v. Rosario*, N.Y.2d 286 (Ct. App. 1961) (ground six) (Pet. at 6); (6) petitioner was denied due process because he was not provided with the transcript from his first, aborted trial and the minutes from grand jury proceedings against him (ground seven) (Pet. at 8, 9); (7) Ms. Loschin's identification of petitioner at trial was uncorroborated (grounds two and seven) (Pet. at 5, 8-9); (8) the People changed the charges against Ms. Loschin based on her trial testimony, which allegedly indicates that she only testified against him to obtain a reduced sentence (grounds three and seven) (Pet. at 12, 14); (9) the trial court excluded exculpatory testimony from the victim and her family that the victim had previously met people for "sexual liaisons" (ground seven) (Pet. at 12); (10) the People presented perjured testimony by an America Online (AOL) representative, Karen Vuckson (grounds three and seven) (Pet. at 13, 14); (11) petitioner was the victim of credit card fraud, an allegation which he claims is exculpatory with respect to his AOL communications with the victim (ground three) (Pet. at 14); (12) all counts convicted were "against the weight of credible evidence" (ground five) (Pet. at 6); (13) the kidnapping charges merged with the sex crimes (ground four) (Pet. at 6); (14) petitioner did not receive a speedy trial (ground seven) (Pet. at 13); (15) petitioner's trial counsel was ineffective because he would not allow petitioner to testify or respond to the media (grounds four and seven) (Pet. at 8, 14).[2]

---

[2] In addition to these fifteen claims, petitioner makes a series of allegations that do not facially state a cognizable claim, either because they make no reference to federal law or because they include no specific factual allegations. *See* 28 U.S.C. § 2254(a); 28 U.S.C. foll. § 2254, Rules Governing § 2254 Proceedings, Rule 2(c)(1)-(2).  Even if these allegations could be construed to state federal claims, they are nonetheless plainly meritless and the Court therefore declines to address them.  *See Lopez v. Lee*, No. 11-CV-2706 (JG), 2011 WL 6068119, at *11 (E.D.N.Y. Dec. 7, 2011) (declining to address issues of exhaustion and procedural bar where claims are meritless). These allegations are as follows: (1) there was a delay of seven days between indictment and arraignment (Pet. at 13.); (2)

For the reasons that follow, the petition is DENIED in its entirety.

## BACKGROUND

## I.   <u>Relevant Factual Background</u>

During March of 2001, petitioner James Warren engaged in repeated communications with the victim, a fifteen year-old girl, in an Internet chat room devoted to sadomasochistic sex. (Trial Tr. at 934-937.)  Petitioner, using the screen name "SIR631," discussed sadomasochistic sex and master/slave relationships with the victim, who used the screen name "ClarinetTweetie." (*Id*.)  Around June of 2001, petitioner began communicating with Beth Loschin, a self-employed prostitute who monitored sadomasochistic chat rooms.  (*Id*. at 565-80.)  Petitioner and Ms. Loschin began a sexual relationship shortly thereafter.  (*Id*. at 581.)  Near the end of July, petitioner and Ms. Loschin discussed bringing another sexual partner into their relationship, and petitioner suggested "a young girl he knew online:" the victim.  (*Id*. at 585.)  Ms. Loschin apparently made it clear that she would only engage in a sexual relationship with someone old enough to be legally capable of consent.  (*Id*.)  Petitioner assured Ms. Loschin that the girl with whom he had been communicating was eighteen years old, and Ms. Loschin agreed to meet her. (*Id*. at 589.)

Shortly before August 3, 2001, petitioner and the victim made plans to meet.  (Trial Tr. at 936.)  Petitioner told the victim that if she engaged in sexual intercourse with him whenever he wanted, she could do "whatever [she] wanted to do," and she agreed to this arrangement, in part because she was unhappy and wanted to leave home. (*Id*. at 1006.)  The victim testified that she

---

there was no basis for the charges because petitioner obtained a portion of a statement in which the victim allegedly denied some of the charges (Pet. at 5); (3) the state courts "failed to follow the laws of New York and precedents [*sic*] as established by Supreme Court" (Pet. at 6); (4) the trial court improperly denied the defense motion to dismiss the charges at the conclusion  of evidence on the grounds of legal insufficiency (Pet. at 6); (5) petitioner received consecutive rather than concurrent sentences because he refused to plead guilty, and "vindictiveness is not to be part of sentencing" (Pet. at 7); (6) "according to the People guilt was not an issue, only the appearance of it for the media" (Pet. at 7); and  (7) the indictment was defective in that it charged a James Warren with a different date of birth and different middle initial (Pet. at 9).

understood this agreement to mean that they would engage in "regular . . . vaginal sex." (*Id*. at 1014.)  On August 3, 2001, petitioner and Ms. Loschin picked up The victim at a shopping mall in Massachusetts and she accompanied them voluntarily.  (*Id*. at 1013.)  They stopped at a motel room, where petitioner immediately slapped The victim, blindfolded her, hung her from a coat rack with a belt, and among other things, had anal, vaginal, and oral sex with her without her consent.  (*Id*. at 940-945.)  Ms. Loschin participated in these acts.  (*Id*. at 934-944.)  The victim did not resist, because she "didn't want to say anything to upset [petitioner] more, to make him hurt [her] more than he already [had]."  (*Id*. at 944.)

The next day, petitioner and Ms. Loschin took the victim to Ms. Loschin's home in Long Island, where the rape and assault continued for days.  (Trial Tr. at 853-54.)  From the moment the victim got in Ms. Loschin's car until the night of August 10, 2001, The victim was repeatedly fondled, restrained, raped, sodomized, choked, urinated upon, burned and beaten by petitioner and Ms. Loschin.  (*Id*. at 596-637, 937-960.)  The victim did not attempt to stop these repeated attacks because petitioner told her that if she didn't do what he wanted, he would break her legs or kill her.  (*Id*. at 949-950.)  On August 10, the victim was left alone and was able to call the police, who arrived at Ms. Loschin's home, spoke with the victim, and arrested petitioner and Ms. Loschin.  (*Id*. at 638-39.)

In December 2001, Ms. Loschin entered a plea of guilty with an agreed upon sentence of four years incarceration, pursuant to a cooperation agreement with the People that required her to testify against petitioner.  (Trial Tr. at 812-815.)

## II.   <u>Indictment</u>

Petitioner was charged by indictment with kidnapping in the first degree (N.Y. Penal Law § 135.25(2)(a)); rape in the first degree (N.Y. Penal Law § 130.35(1)) (five counts); rape in the

4

third degree (N.Y. Penal Law § 130.25)(five counts); sodomy in the first decree (N.Y. Penal Law § 130.50(1)) (twenty-one counts); sodomy in the third degree (N.Y. Penal Law § 130.40(2)) (twenty-one counts); sexual abuse in the first degree (N.Y. Penal Law § 130.65(1)) (six counts); assault in the second degree (N.Y. Penal Law § 120.05(2)) (two counts); assault in the third degree (N.Y. Penal Law § 120.05(2)); endangering the welfare of a child (N.Y Penal Law § 260.10(1)); and attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25(1)) (two counts).[3]  (Pet. at 1; Resp. Brief at 5-6.)

## III.  <u>Trial, Conviction, and Sentencing</u>

Petititioner's trial began on November 12, 2002.  (Trial Tr. at 1.)  After voir dire and opening statements had been concluded, several jurors heard the words "he's guilty" while leaving the courtroom for a short break.  (*Id.* at 276.)  Petitioner's counsel, Brian Kelly, moved for a mistrial.  (*Id.* at 288.)  Judge Honoroff declared a mistrial, and a new jury was then empaneled.  (*Id.* at 288-538.)  Petitioner's new trial concluded on December 6, 2002.  (*Id.* at 1484-1511.)

The primary witnesses against Warren were the young victim, and Beth Loschin, petitioner's accomplice.  Both the victim and Ms. Loschin gave detailed testimony against Warren, though he victim could not identify him at trial.[4]  The prosecution also introduced testimony from a variety of other witnesses who corroborated the testimony of the victim and Ms. Loschin: Ms. Loschin's brother, Jeffrey Loschin testified that he saw petitioner with the

---

[3] As discussed below, the Appellate Division modified petitioner's conviction on direct appeal to eliminate the counts of sodomy in the third degree, which were duplicative of the first degree sodomy counts.  *People v. Warren*, 22 A.D.3d 773, 774 (2d Dep't 2005).

[4] Detective Kierstiens, Jeffrey Loschin, and Officer Thomas Kaczmarck, a defense witness, all testified that Warren's appearance was different at the time of his arrest than at trial.  Detective Kierstiens testified that on August 10th, 2001, petitioner had longer hair that was red, rather than gray, and that he was wearing wire-rimmed glasses. (Trial Tr. at 1154.)  Mr. Loschin testified that in early August, 2001 petitioner had longer hair and different glasses and appeared taller than he did at trial.  (*Id.* at 1231.)  Mr. Kaczmarck likewise testified as to the significant differences between petitioner's hair and glasses at the time of arrest and trial.  (*Id.* at 1260.)

victim throughout the week of August 3, 2001 and described the nature of their interactions (Trial Tr. at 1229-1234), and Robert Kerstiens, a Nassau County Detective who was called to Ms. Loschin's home on the night of the arrests, testified as to petitioner's presence at the scene and appearance at the time of his apprehension. (*Id.* at 1149).

The prosecution also called Karen Vuckson, a fraud investigator from AOL who linked petitioner to the AOL account used to communicate with the victim; Dr. Metthama Daniel, who examined the victim in the pediatric emergency room at Nassau University Medical Center on August 10, 2001; Dr. Marcelle Morcos, an expert witness in the field of ophthalmology who reviewed the victim's medical records and determined that severe hemorrhages to the victim's eyes detailed in those records were the result of intense physical struggling. (Trial Tr. at 1246-1250, 1022-1030, 911-921.)

The defense focused on the argument that the victim consented to accompany petitioner, that she consented to – and even solicited – sex from the defendant, and that there was no forcible rape or criminal sexual conduct. (*See* Trial Tr., Closing Statements, at 1290-1321.) The defense also argued that Beth Loschin perjured herself in an attempt to secure a lenient sentence and that her testimony against petitioner should be disregarded. (*Id.* at 1308-1312.) Petitioner did not testify on his own behalf.

On December 6, 2002, petitioner was convicted of all counts charged except for the two counts of attempted murder in the second degree. (Trial Tr. at 1494-1509.) He was sentenced to an aggregate indeterminate term of one hundred and fifty years to life imprisonment. (Sent. Tr. at 18-34.)

## IV.   **Direct Appeal**

6

Petitioner, represented by appellate counsel Mark Diamond, filed his direct appeal on July 13, 2004.  He raised nine claims of error: (1) petitioner was unlawfully convicted upon the uncorroborated testimony of an alleged accomplice; (2) the kidnapping charges merged with the sex crimes, and therefore petitioner was unlawfully convicted of kidnapping; (3) the conviction was against the weight of the credible evidence; (4) the conviction was unsupported by legally insufficient evidence; (5) several counts of the indictment were multiplicitous; (6) the trial court improperly precluded the defense from eliciting exculpatory testimony from the victim and her family; (7) the prosecution failed to provide the defense with *Rosario* material; (8) the trial court erred in imposing consecutive sentences, resulting in an unconstitutionally harsh and excessive sentence, and (9) petitioner's due process rights were violate by the denial of his motion to vacate his conviction pursuant to CPL § 440.10.  (Appellant Br. Direct Appeal at 28-62.)  On September 27, 2004, the People filed their reply in opposition.

On October 24, 2005, the Appellate Division issued an opinion affirming petitioner's conviction on sixty-one of the sixty-three convicted counts, and modifying the judgment by vacating the convictions for sodomy in the third degree under counts 46 and 47 of the indictment as duplicative of counts 18 and 19.  *People v. Warren*, 22 A.D.3d 773, 775 (2d Dep't 2005).  The Appellate Division held that Loschin's testimony was sufficiently corroborated and that there was legally sufficient evidence of lack of consent and forcible compulsion to support petitioner's conviction on the sex crimes.  *Id*. at 775.  The court did not specifically address petitioner's other claims of error, holding instead that his "remaining contentions [were] either unpreserved for appellate review or without merit."  *Id.* at 775.

On November 7, 2005, petitioner, through counsel, sought leave to appeal to the New York Court of Appeals, raising an identical set of claims to the ones he raised to the Appellate

7

Division.  On February 27, 2006, the Court of Appeals denied petitioner's leave application on the grounds that there was no question of law presented that ought to be reviewed by the Court of Appeals.  *People v. Warren*, 6 N.Y.2d 819 (Ct. App. 2006).  Petitioner, proceeding *pro se*, moved by letter for reconsideration of his application for leave to appeal, and the People opposed that motion.  The Court of Appeals denied petitioner's motion on April 25, 2006.  *People v. Warren*, 6 N.Y.3d 854 (Ct. App. 2006).

While petitioner's application for leave to appeal was pending in the Court of Appeals, he filed a *pro se* motion to reargue his direct appeal in the Appellate Division, arguing that: (1) Loschin's identification of him at trial was insufficiently corroborated; (2) the People presented perjured testimony by Karen Vuckson; (3) petitioner was the victim of credit card fraud with respect to his AOL account; (4) the victim could not identify him in court; (5) the prosecution withheld *Rosario* material from him; (6) he was charged by a defective indictment; and (7) the victim accompanied him voluntarily.  (Mot. to Reargue at 1-7.)  The motion was denied by the Appellate Division on January 30, 2006.

## V.    State Collateral Review

Petitioner made two motions to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  Both motions were denied by the New York Supreme Court, Nassau County.  In petitioner's first *pro se* motion to vacate his conviction, he argued that: (1) Loschin's confession was coerced; (2) the People changed the charges against Loschin based on her trial testimony; (3) petitioner is impotent and was medically incapable of intercourse when the crimes were perpetrated; (4) the prosecution withheld *Rosario* material from petitioner; (5) petitioner was the victim of credit card fraud with respect to his AOL account; and (6) petitioner's trial counsel was ineffective for a variety of reasons, including his alleged failure to

8

apprise petitioner of the maximum sentence he could receive and to obtain *Rosario* material from

the people.  (Aff. in Supp. First Mot. Vacate at 1-9.)  The People opposed this motion, arguing

that most of petitioner's claims were procedurally barred pursuant to CPL § 440.10(2)(b)

because his direct appeal was still pending, and that his remaining claims did not present grounds

for granting the requested relief.  (Resp. Br. at xii.)[5]  The Nassau County Court denied

petitioner's first motion to vacate his conviction on December 19, 2003.   Judge Dillon held that

some of defendant's contentions were procedurally barred by CPL § 440.10(2)(b), while the

others were unsupported by anything but petitioner's allegations of fact and were thus barred by

CPL § 440.30(4)(d).  (Order Den. First Mot. Vacate.)  The court adjudicated petitioner's

ineffective of assistance claim on the merits, finding that petitioner had failed to overcome the

strong presumption that counsel rendered effective assistance.  (*Id.* at 2.)  Petitioner did not seek

leave to appeal this decision to the Appellate Division.

Petitioner's made his second *pro se* motion to vacate his conviction pursuant to CPL §

440.10 in approximately May, 2005.  He raised the following claims: (1) the prosecutor failed to

disclose the record of petitioner's AOL account, which petitioner claimed were exculpatory, and

then selectively used those records at trial; (2) the prosecution failed to link petitioner to the

AOL account used to communicate with the victim: (3) the Prosecution knowingly presented

perjured testimony by Karen Vuckson and Beth Loschin; (4) Ms. Loschin's confession was

coerced; (5) the People rested their case solely on Loschin's uncorroborated testimony; (6)

petitioner was impotent and therefore medically incapable of sexual intercourse at the time the

crimes were committed; (7) the prosecution failed to produce *Rosario* materials; and (8) trial

counsel was ineffective for failure to obtain *Rosario* materials, object to the allegedly perjured

---

[5] Because a copy of the People's brief in opposition to petitioner's first motion to vacate his conviction was not
included in the state court record provided to the Court, the Court assumes that the summary of the relevant
arguments set forth in Respondent's reply in opposition to petitioner's federal habeas petition is accurate.

testimony, cross-examine Karen Vuckson, and introduce evidence of petitioner's erectile dysfunction.  (Aff. in Supp. Second Mot. Vacate.)  The People opposed this motion on the grounds that most of petitioner's claims were procedurally barred by CPL § 440.10(2)(b) because petitioner's appeal was still pending.  (Aff. in Opp'n Second Mot.Vacate, at 6-27.)  The People further argued that the remainder of petitioner's claims were procedurally barred by CPL § 440.30(3)(b)-(c), because he either unsuccessfully raised them in his prior CPL § 440.10 motion, or could have, but failed to do so.  (*Id.*).  The People also responded to each of petitioner's allegations on the merits, citing CPL § 440.30(4)(d) and arguing that his conclusory allegations were refuted by the record, and that there was no reasonable probability that any of them were true.  (*Id.*)

On December 8, 2005, the Supreme Court, Nassau County, denied petitioner's second motion to vacate on the grounds that his claims fell into two categories: those that were procedurally barred by CPL § 440.10(2)(a), and those that were supported only by defendant's conclusory allegations and were therefore barred by CPL § 440.10(4)(d).  Citing CPL § 440.10(3)(b)(c), the Court further held that the claims in the second category were summarily denied because they were either unsuccessfully raised in petitioner's first motion to vacate, or because they could have been raised but were not.  (Order Den. Second Mot. Vacate. At 2.)

On February 13, 2006, petitioner appealed to the Appellate Division the denial of his second motion to vacate.  This motion was summarily denied on April 24, 2006.  Petitioner then sent a letter to the Court of Appeals, requesting information on how to appeal from the April 24 order denying leave to appeal to the Appellate Division.  A deputy clerk at the Court of Appeals informed Warren by letter that neither judges nor court staff could give legal advice, and that orders denying leave to appeal to the Appellate Division from a denial of a § 440.10 motion are

10

not appealable, citing CPL § 450.90.  Petitioner again sought leave to appeal to the Court of

Appeals, by letter dated May 17, 2006.  That letter has been deemed an application for a

certificate permitting a further appeal and has been assigned to Judge Robert S. Smith, and as far

as the Court has been able to determine there has been no disposition of that application.

      At some point before January 29, 2008, petitioner apparently filed a petition for a writ of

habeas corpus in the New York Supreme Court, Cortland County.  Though the Court is not in

receipt of this petition, it is in receipt of a letter decision and order denying the petition on the

grounds that the facts and arguments set forth do not establish a basis for the relief sought.  The

Cortland County Court informed Warren that the arguments raised would have properly been the

subject for direct appeal or a postconviction motion pursuant to CPL 440.10, and therefore could

not be raised by way of a state petition for habeas corpus. (Order Den. State Habeas Pet. at 1.)

Justice Rumsey strongly encouraged Warren to obtain legal assistance before bringing any

further proceedings.  (*Id.*)

      Finally, petitioner moved *pro se* for a writ of *coram nobis* to vacate his direct appeal on

the grounds of ineffective assistance of appellate counsel.  Though the Court is not in receipt of

that motion and therefore has not reviewed it, it was summarily denied on March 4, 2008.

*People v. Warren*, 49 A.D. 569 (2d Dep't 2008).


## STANDARD OF REVIEW

      In deciding a federal habeas corpus petition, the Court must apply the standard of review

set forth by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §

2254(d)(1).  AEDPA requires a rigorous standard of review with regard to petitions filed by state

prisoners.  *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).  Under AEDPA, a federal court

11

may only grant a state prisoner's petition for habeas corpus on a claim adjudicated on the merits

in state court, where the adjudication of that claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The "contrary to" and "unreasonable application" clauses of

§ 2254(d)(1) are analyzed independently. *Williams,* 529 U.S. at 404-405. Claims that have not

been adjudicated on the merits by a state court are subject to *de novo* review if they are not

procedurally barred. *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1)

disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v.

Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). A state court is not required to refer explicitly to the

federal claim or discuss relevant federal case law for its decision to constitute an adjudication on

the merits. *See Id.* Federal courts "recognize a conclusive presumption that, when presented

with an express federal claim, a state court's decision rests principally upon an application of

federal law even absent any express reference to federal authority." *Reznikov v. David*, No. 05-

CV-1006, 2009 WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314). Thus, a

state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits

of that claim. *See Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006).

A state court decision will be "contrary to" established Supreme Court precedent if "the

state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases"

or if a state court "confronts a set of facts that are materially indistinguishable from a decision of

[the Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

precedent." *Williams*, 529 U.S. at 405-06.

12

With respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 413. The state court's application of the law must be "objectively unreasonable," *Id.* at 409-10, which is a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d 114, 122 (2d Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993)).

The standard prescribed by AEDPA requires that federal courts treat state court adjudication with great deference. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). This deferential standard extends to factual determinations made by the state court: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner can only rebut this presumption of correctness with clear and convincing evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

## DISCUSSION

As a threshold matter, the Court is mindful of its obligation to construe petitioner's *pro se* pleadings liberally. *Bell v. Ercole*, 631 F. Supp. 2d 406, 413 (S.D.N.Y. 2009). As petitioner is proceeding *pro se*, his submissions "should be held to less stringent standards than formal pleadings by lawyers," and the Court "must liberally construe [them] . . . and interpret them to raise the strongest arguments that they suggest." *Id.* However, petitioner's *pro se* status does not exempt him from the burden of setting forth the grounds of relief available to him, along with the

facts supporting each ground.  *See* Rules Governing § 2254 Cases, Rule 2(b), 28 U.S.C.A. foll. §

2254; *Mayle v. Felix*, 545 U.S. 644, 655-656 (2005) (explaining the heightened pleading

standard for habeas petitions, which is "more demanding" than the requirements for ordinarily

civil proceedings under Fed. R. Civ. P. 8(a)).  This Court, to comply with the liberal rule of

construction for *pro se* habeas pleadings, "need not argue a pro se litigant's case nor create a case

for the pro se which does not exist."  *Molina v. New York*, 956 F. Supp. 2d 257, 259 (E.D.N.Y.

1995).

The majority of the petition before this Court consists of factual allegations without the

benefit of accompanying arguments as to which constitutional provisions the errors alleged are

claimed to violate.  However, a thorough review of the record and liberal construction of the

petition suggests that petitioner's claims fall into several categories.  The first category involves

claims that are not cognizable on federal habeas review because they implicate only questions of

state law.  The second category is comprised of claims that are unexhausted, and either denied on

the merits or excised from the petition.  The third are claims that are procedurally barred from

federal review.  In addition to these three categories of claims, petitioner also makes a Fourth

Amendment claim, which is barred from federal habeas review by the Supreme Court's decision

in *Stone v. Powell*, 482 U.S. 493 (1976).  Finally, petitioner argues that the trial court excluded

exculpatory testimony by the victim, a due process claim that he fully exhausted.  The Court has

reviewed this claim under the deferential standard prescribed by 28 U.S.C. § 2254(d) and finds it

to be meritless.

## I.      State Law Claims

Petitioner sets forth four claims that are not cognizable on federal habeas review because

they present only questions of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (noting

that federal habeas corpus relief is unavailable for errors of state law, as "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Though all of these claims were properly raised in the state courts and are therefore exhausted, the Court may not review them.

### A. The Kidnapping Charges Merge with the Sex Crimes

Petitioner claims that the kidnapping charges of his conviction merged with the sex crimes because the victim "voluntarily" accompanied him for "sexual purposes." (Pet. at 6.) "Misapplication of the merger doctrine is not a violation of federal law [and is purely] a state law judicial construct." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, at *6 (E.D.N.Y. December 9, 2010). Because "the merger doctrine was developed by New York state courts and is a doctrine of state law . . . a violation [of this kind] does not present a cognizable claim in a habeas proceeding." *Smith v. Lempke*, No. 08-CV-6065, 2010 WL 2629794, at *13 (W.D.N.Y. June 28, 2010). *See also Mackenzie v. Portuondo*, 208 F. Supp. 2d 302, at 322 (E.D.N.Y. 2002) (finding petitioner's state law merger doctrine claim not cognizable on habeas review).

### B. *Rosario* Violation

Petitioner also claims that the prosecutor withheld pre-trial statements that Beth Loschin allegedly made to the police, in violation of *People v. Rosario*, 9 N.Y.2d 286 (Ct. App. 1961), which requires prosecutors to turn over to defense counsel any and all pre-trial statements made by a prosecution witness relating to that witness's testimony in court. This claim is purely a question of state law, and as such is not cognizable on federal habeas review. *See Alston v. Ricks*, No. 01 Civ. 9862(GWG), 2003 WL 42144 at *6 (S.D.N.Y. Jan. 7, 2003) ("Federal courts uniformly hold that *Rosario* violations are not cognizable in habeas review."); *Green v. Artuz*,

990 F. Supp. 267, 275 (S.D.N.Y. 1998) ("[T]he failure to turn over *Rosario* material is not a basis for habeas relief.").

### C. Conviction Was Based Solely on the Uncorroborated Testimony of an Accomplice

Petitioner argues at length that his conviction was unlawful because it was, he claims, based on the uncorroborated testimony of his accomplice, Beth Loschin.  (Pet. at 5, 12.)  This is a claim that he raised at every stage of his state proceedings except for his first motion to vacate his conviction and is therefore exhausted.  *See Harvey*, 2002 WL 2003210, at *5.  In support of this claim, petitioner now relies on allegations that there was "no physical or scientific evidence" to connect him to the crime and "no DNA was found;" that he was not "placed at the crime scene;" that the victim could not identify him at trial; that petitioner "does not look like or resemble" the attacker; and that the victim was a juvenile "interrogated approx. [*sic*] ten hours without parental approval" who "gave conflicting statements" to police and hospital personnel. (Pet. at 8, 9, 12, 14.)  Petitioner argues that his conviction upon Loschin's testimony in light of these errors violates CPL § 60.22 (Pet. at 12.)  That provision prohibits conviction "upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."  N.Y. Crim. Pro. Law § 60.22.

Leaving aside the ample indication on the record that Beth Loschin's testimony was not in fact uncorroborated, the Court may not adjudicate this claim as a matter of law.  "Because [petitioner's] claim is based solely on the New York state law accomplice corroboration requirement, *see* N.Y. Crim. Pro. Law § 60.22, it does not constitute a claim of a violation of a federal constitutional right.  Indeed, there is no federal constitutional rule requiring the corroboration of accomplice testimony."  *Martinez v. Walker*, 380 F. Supp. 2d 179, 184 (W.D.N.Y. 2005) (citing *Caminetti v. United States*, 242 U.S. 470, 495 (1917)).  Furthermore,

16

arguments pertaining to lack of corroboration go to the weight of the evidence and not its

sufficiency.  *Id*.  "Unlike a sufficiency of the evidence claim, which is based upon federal due

process principles, a weight of the evidence claim is an error of state law, for which habeas

review is not available."  *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation

and internal quotation marks omitted).  Petitioner's extensive argument that Loschin's testimony

was uncorroborated is a "weight of the evidence claim," which does not constitute a "federal

claim as required by 28 U.S.C. § 2254(a)."  *Id*.

Petitioner also makes a freestanding claim that "all counts convicted were against the

weight of credible evidence."  (Pet. at 6.)  It goes without saying that this claim is also

unreviewable. *Garrett*, 438 F. Supp. 2d, at 470.

## II.   **Unexhausted Claims**

As a general rule, petitioner may only bring habeas claims pursuant to § 2254 if he has

first exhausted his state court remedies as to each claim.  *See* 28 U.S.C. § 2254(b)(1)(A) ("An

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court shall not be granted unless it appears that . . . the applicant has exhausted the

remedies available in the courts of the State.");  *Rose v. Lundy*, 455 U.S. 509, 515–16, 518

(1982) ("The exhaustion doctrine existed long before its codification [in 28 U.S.C. § 2254] by

Congress in 1948" and is 'designed to protect the state courts' role in the enforcement of federal

law and prevent disruption of state judicial proceedings.").

To satisfy the exhaustion requirement, a petitioner must first "fairly present to an

appropriate state court the same federal constitutional claim that he now urges upon the federal

courts."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).  A federal habeas petitioner may

"fairly present to the state courts the constitutional nature of his claim, even without citing

chapter and verse of the Constitution," by stating his constitutional claim clearly enough so that a

court can easily discern its basis. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir.

1982) (en banc). In other words, a claim has been fairly presented to the state courts if

"essentially the same factual patterns and legal doctrines which are raised [in the federal petition]

were previously presented to the highest state court." *Brooks v. Kelly,* No 99-CV-0631E, 1993

WL 350188, at *1 (W.D.N.Y Sept. 10, 1993). The petitioner must employ "all available

mechanisms to secure appellate review" of the state court's denial of his claim. 28 U.S.C. §

2254(c).

A petitioner may satisfy the exhaustion requirement either through a full round of the

state's appellate review process or through a full round of postconviction proceedings. *See, e.g.*

*Harvey v. Portuondo*, No. 98-CV-7371 (JG), 2002 WL 2003210, at *5 (E.D.N.Y. August 5,

2002) ("[E]ven if a claim is not raised at trial or on direct appeal, a claim pursued throughout a

full round of state post-conviction proceedings is exhausted."); *Castille v. Peoples*, 489 U.S.

346, 350-351 (1989) ("[O]nce state courts have ruled upon a claim, it is not necessary for a

petitioner to ask the state for collateral relief [to satisfy the exhaustion requirement.]"). A full

round of either appellate or collateral review requires the use of any discretionary appeal

procedures that are an "established part" of the state's appellate or collateral review process,

respectively. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

When confronted with a "mixed petition" – that is, one that contains both exhausted and

unexhausted claims – a district court has four options. *See Pantoja v. New York State Div. and*

*Bd. of Parole*, No. 11 Civ. 9709 (CS)(PED), 2013 WL 866869, at *6 n.13 (S.D.N.Y. 2013)

*report and recommendation adopted by* No. 11-CV-9709(CS)(PED), 2013 WL 865905

(S.D.N.Y. March 8, 2013) (summarizing the options available to a district court when faced with

18

a mixed petition).  The district court may dismiss the entire petition without prejudice so that the petitioner may exhaust his unexhausted claims, but should only do so if dismissal would not jeopardize the timeliness of a collateral attack under AEDPA's 1-year limitations period. *Zarvela v. Artus*, 254 F.3d 374, 380 (2d Cir. 2001) (citation and quotation marks omitted).  The district court may also stay the federal petition to allow the petitioner to return to state court and exhaust his claims.  *Rhines v. Weber*, 544 U.S. 269, 277 (2005). This option is available only if the petitioner has shown good cause for his failure to exhaust, and then only if the unexhausted claims are not plainly meritless.  *Id.*  The district court also has discretion to deny a petition on the merits that contains unexhausted claims if it determines that those claims are meritless.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State."); *Velazquez v. Poole*, 614 F. Supp. 2d 284, 311 (E.D.N.Y. 2007) (noting that AEDPA allows a district court to deny unexhausted claims on the merits).  Though neither the Supreme Court nor the Second Circuit has established a standard to guide the exercise of this discretion, many courts in this Circuit have denied unexhausted claims upon a determination that they are patently frivolous.  *See, e.g., Cummings v. Conway,* No. 09-CV-740(MAT), 2011 WL 2516581, at *4 (W.D.N.Y. June 23, 2011) (noting that several district judges in this Circuit have expressed the test as whether the unexhausted claim is 'patently frivolous'); *Fayton v. Connolly*, No. 06 Civ. 3685 (SAS), 2009 WL 1615995, at *4 (S.D.N.Y. June 9, 2009) (finding that many district courts have chosen to deny unexhausted claims that are 'patently frivolous'); *Naranjo v. Fillion*, No.02 Civ.5449 WHPAJP, 2003 WL 1900867, at *8 (S.D.N.Y. April 16, 2003) (explaining that "the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims.)*. A district court's final option when faced with a mixed petition

is to assume that the petitioner would prefer the Court to consider the majority of his claims rather than dismiss the petition outright, treat the unexhausted claims as excised from the petition, and consider the remainder of the claims on the merits.  *See Chu v. Artus*, 07-CV-6684, 2011 WL 8202381, at *1 (S.D.N.Y. Aug. 9, 2011) *report and recommendation adopted by* 07-CV-6684, 2012 WL 2899378 (S.D.N.Y. July 16, 2012) (excising some unexhausted claims and deciding the rest on the merits ); *Reyes v. Morrissey,* 07-CV-2539, 2010 WL 2034531, at *9 (S.D.N.Y. April 21, 2010) *report and recommendation adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010) (same); *Taylor v. Poole,* No. 07-CV-6318, 2009 WL 2634724, at *25, n.11 (Aug. 29, 2009) (Report and Recommendation) (same).

The instant petition includes four unexhausted claims. Three of them are patently frivolous and thus denied on the merits:  denial of 1) a portion of the trial minutes, and 2) the grand jury transcript, and 3) denial of petitioner's requests for counsel.  And for reasons discussed below, the fourth – relating to destruction of alleged exculpatory evidence – is considered excised from the petition.

### A. Petitioner Was Denied a Portion of the Minutes from His Trial

Petitioner claims that he was provided with an incomplete trial transcript when preparing for his appeal and that this constituted a denial of due process under the Fourteenth Amendment. (Pet. at 9.)  According to petitioner, pages 1-288 of his trial transcript were never turned over to him.  (*Id.*; Mot. for Add'l Minutes, at 1-2.)  This is a claim that he has raised repeatedly in previous submissions to the state courts: first by a motion to the Appellate Division that was summarily denied on November 23, 2004, then to the Court of Appeals in his motion seeking reconsideration of the order denying leave to appeal, and finally in his second motion to vacate his conviction under CPL § 440.10.  (Mot. Add'l Minutes, at 1-2; Letter Mot. Recons. at 3;

Letter "Re: Reconsideration" at 1, 6; Supplemental Resp. to People at 5-7.)  However, he did not raise it in his motion for leave to appeal the denial of his second motion to vacate, and it is therefore unexhausted.  *See Pesina v. Johnson*, 913 F.2d 53 (2d Cir. 1990) (affirming a decision of the district court that claim was unexhausted because petitioner did not appeal the denial of his § 440.10 motion).

Petitioner's claim is clearly without merit.  Though "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," petitioner has never indicated why he might need the portion of the transcript in question.  *Britt v. North Carolina*, 404 U.S. 226, 227 (1971).  A particularized showing of need is not (and must not) be required; instead, courts should consider "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Id*. Though "a stenographic transcript of . . . [trial] proceedings is . . . an invaluable aid to the prosecution of most appeals," the absence of a full transcript does not in itself frustrate the fundamental right of a criminal defendant to appeal his conviction. *People v. Rivera*, 39 N.Y.2d 519, 523 (Ct. App. 1976).

Petitioner seeks pages 1-288 of his trial transcript.  These pages contain the record of his first, aborted trial, which ended when the court granted a mistrial on the grounds that two jurors heard someone say that Warren was guilty.  (Trial Tr. At 276-286.)  The pages in question consist of voir dire for a jury that was later dismissed and opening statements that were repeated during petitioner's new trial.  (Trial Tr. at 550-563).  Petitioner has never made any arguments as to why these minutes might be useful to him or alerted a court to the issues contained within them that he believes are appealable. Though there is a presumption that mistrial transcripts are

21

valuable to indigent defendants as a discovery device in preparation for trial or as a tool at the trial itself for the impeachment of prosecution witnesses, neither component of that presumption applies here. *Britt*, 404 U.S. at 228. Petitioner's trial has concluded, rendering "discovery devices" unnecessary. No witnesses were called during the first, aborted trial that could have been impeached using its transcripts. As petitioner's case now stands, there is no suggestion that those portions of the transcripts are necessary to vindicate a legal right. *U.S. v. Agbodjan*, 871 F. Supp. 2d 95, 102 (N.D.N.Y. 2012) (denying a defendant's request for pre-trial transcripts because he did not "indicate how they would be helpful in vindicating a legal right"). Petitioner has failed to show that his mistrial transcript would be useful to him, thereby falling short even of the lenient standard set forth in *Britt*. This claim is therefore denied on the merits, notwithstanding petitioner's failure to exhaust it. *See Fayton*, 2009 WL 1615995, at *4.

**B. Petitioner was Denied the Transcript from his Grand Jury Proceedings**

Petitioner also claims that he requested and was denied access to the transcript of his grand jury proceeding, which he believes would reveal that a "different person was identified with the same name and different date of birth" was the subject of the investigation. (Pet. at 9.) This claim is patently frivolous. "A petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by confirming that the state had probable cause to indict the petitioner and that he was actually guilty beyond a reasonable doubt. Thus, constitutional challenges to state grand jury proceedings are not cognizable for federal review." *See Mackenzie*, 208 F. Supp. 2d at 313. It follows that following petitioner's conviction, a denial of access to the minutes of those proceedings cannot be the basis of an alleged constitutional violation. This claim is therefore without merit and, though unexhausted, is denied. *See Fayton*, 2009 WL 1615995, at *4.

22

### C.  Police Ignored Petitioner's Requests for Counsel

Petitioner claims for the first time in his petition that the police denied his requests for counsel during his interrogation.  (Pet. at 5.)  Though he does not refer to any federal law, this is clearly an attempt to articulate a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  The claim is unexhausted, as petitioner has never raised it to any state court.  28 U.S.C. § 2254(b)(1)(A).  Petitioner's alleged *Miranda* violation, even if true, amounts to no more than harmless error in light of the overwhelming evidence against him.  *See Wright v. Bennett*, No. 02-CV-136, 2003 WL 1864063, at *2 (S.D.N.Y. April 25, 2003) (dismissing petitioner's unexhausted *Miranda* claim on the merits because the claimed violation amounted to harmless error in light of the evidence against him); *see also Hawthorne v. Schneiderman*, 695 F.3d 192, 198 (2d Cir. 2012) (affirming a district court's holding that an unexhausted *Miranda* claim was procedurally barred on the grounds that petitioner could not show that he was prejudiced by the alleged *Miranda* violation).

When evaluating claims of constitutional error on habeas review, "courts apply a test for harmless error that looks to whether the error has substantial and injurious effect or influence in determining the jury's verdict." *Drake v. L.A. Portuondo*, 321 F.3d 338, 347 (2d Cir. 2003).  As respondent points out, "even if [petitioner's claim that the police interrogated him without counsel] is true (and there is no reason to believe that it is), petitioner made no statements that were used at trial." (Resp. Br. at 36.)  And based on the state court record, it appears that "[p]etitioner made no incriminating statements after his arrest, and no evidence was adduced based upon the events that followed his arrest." (Resp. Br. at 26.)  In light of the volume of evidence against petitioner apparent on the trial record and the briefs on appeal and collateral review, the Court cannot say that any alleged *Miranda* violation could have had a "substantial"

23

or "injurious effect or influence" on the jury's guilty verdict. Because the Court finds that the alleged *Miranda* violation, even if true, would be harmless, the claim is dismissed on the merits despite being unexhausted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 n.5 (2d Cir. 2001) ("AEDPA permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted.").

### D. The Police Destroyed Alleged Exculpatory Evidence

Petitioner claims for the first time in his federal petition that the police destroyed alleged exculpatory evidence found in his pocket at the time of his arrest. At the time of his arrest, petitioner claims, he had "train ticket stubs showing [he] was daily commuting 100 miles to work, and was not present to commit any crime, or in Massachusetts." (Pet. at 10.) Petitioner alleges that the police either ignored or destroyed this purportedly exculpatory evidence. (*Id.*) This claim has never been presented to a state court and is therefore unexhausted. The claim is not procedurally barred because petitioner could return to state court to exhaust it by filing a third NYCPL § 440.10 motion; therefore this Court may not deem it exhausted. *See* N.Y. Crim. Pro. L. § 440.10(1) (providing that a motion to vacate may be made "[a]t any time after the entry of judgment"); *see also Perez v. Perott*, No. 9:04-CV-327, 2008 WL 2323360, at *6 (N.D.N.Y. June 2, 2008) (noting that "there is no time limit within which an individual must bring a section 440.10 motion").

This claim is based upon information and (purported) evidence not addressed in the state court record, and the Court therefore lacks sufficient information to adjudicate this claim on the merits. Because petitioner has shown no cause whatsoever for his failure to exhaust this claim, however, it would be an abuse of this Court's discretion to stay the petition and allow him to exhaust it in state court. *Rhines*, 544 U.S. at 277. The Court should not dismiss the entire

petition for failure to exhaust this lone claim, because dismissal would certainly jeopardize petitioner's ability to present a timely federal habeas petition. *See* 28 U.S.C. § 2244(d)(1) (providing that a one-year period of limitation applies to petitions for habeas corpus); *see also Zarvela*, 254 F.3d at 380. Accordingly, the Court will proceed with its only remaining option and treat this claim as excised from the petition. *See, e.g. Chu*, 2011 WL 8202381 at *1.

## III.   Procedurally Barred Claims

Federal habeas review is not available for a federal constitutional claim if the state court's decision on that claim rested on a state law ground that is both independent of the federal issue and adequate to support the state court's judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This prohibition applies to procedural state law grounds and "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id*. at 729-30; *see also Lee v. Kemna*, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim.") (citation and internal quotation omitted). A federal court may not entertain a procedurally barred claim "absent a showing of cause and prejudice to excuse the default," or unless the petitioner "can demonstrate actual innocence of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 387-88 (2004) (citing *Murray*, 477 U.S. 478, at 496 (1986)).

To show "cause" for a default, a habeas petitioner must demonstrate that "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Where a petitioner has failed to demonstrate cause, the court need not address the issue of prejudice. *Rivera v. Artus*, No. CV-04-5050 (DGT), 2007 WL 3124558, at *6 (E.D.N.Y. Oct. 25, 2007). If the petitioner does establish cause, the petitioner must then demonstrate

"prejudice" by showing that "'there is a reasonable probability' that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted).

Four of petitioner's remaining claims are procedurally barred, and as petitioner "has made no showing of cause and prejudice or actual innocence, and this case therefore does not present any of the circumstances in which a federal habeas court may review a procedurally defaulted claim . . . [these claims] are not subject to federal habeas review."[6] *See Nelson v. Heath*, No. 11-CV-2183 (JG), 2011 WL 4711763, at *8 (E.D.N.Y October 3, 2011). Petitioner's procedurally barred claims are as follows, and are all unreviewable:

### A. The People Failed to Tie Petitioner to the AOL Account Used to Communicate with the Victim

Petitioner claims that he was convicted on legally insufficient evidence because the People failed to link him to the AOL account used to communicate with the victim. (Pet. at 14.) As petitioner interprets the records that AOL provided, the account belongs to someone else, his name was only placed on the account after his arrest, and the account was still in use while he was in custody, suggesting that he was not the owner of the account. (*Id.*) He raised this argument in his *pro se* motion to reargue; in his *pro se* motion for reconsideration of the Court of Appeals' denial of leave to appeal; in his first *pro se* motion to vacate his conviction pursuant to CPL § 440.10; in his second *pro se* motion to vacate; and finally in his request for leave to

---

[6] In addition to the claims detailed in this section, petitioner argues that his medical records indicate that he has been impotent since 1991 and was incapable of committing the crimes for which he was convicted, an allegation that seems to be directed at showing that he is actually innocent. (Pet. at 9, 14 .) Leaving aside the fact that this claim is procedurally barred, it does not present a freestanding constitutional claim and therefore does not provide a basis for relief. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) (finding that an actual innocence claim tied to other alleged constitutional violations at trial "does not itself provide a basis for relief . . . but instead [is] a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits"). As petitioner's claim also fails to get him through the very high threshold showing of innocence required to pass through that gateway, this Court will not review it. *See Id.*, at 316 (requiring a petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error).

appeal the denial of that motion.  (Mot. Reargue at 1-2; Letter Mot. Recons., at 1-2; Letter "Re:

Reconsideration," at 3-4; Aff. in Supp. First Mot.Vacate, at 1-4 Aff. Supp. Second Mot. Vacate,

at 2-4, 11; Affirm. in Reply to People at 3, 8; Suppl. Resp. to People at 10-11; Aff. in Supp.

Leave to Appeal Den. of Second Mot. Vacate, at 2.)  His claim is therefore exhausted.  *See*

*Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y. 1992) (holding that the exhaustion doctrine

requires only that a petitioner present his claim once on direct or collateral review).  Because the

state court adjudicated this claim on an independent state law ground adequate to support the

judgment, however, it is procedurally barred from federal review.  *See Coleman*, 501 U.S. at 729

(finding that district courts  may not "review a question of federal law decided by a state court if

the decision of that court rests on a state law ground that is independent of the federal question

and adequate to support the judgment").

The Supreme Court, Nassau County, in denying petitioner's second motion to vacate his

conviction, held that this claim fell into a category of claims "based on unsupported conclusory

allegations raised by the defendant . . . [for which] there is no reasonable possibility, based upon

the trial record, that any of his allegations are true."  (Order Den. Second Mot. Vacate.)  In

addition, the court held, "those claims are summarily denied because they were either

unsuccessfully raised by the defendant in his prior CPL 440.10 motion, or because they could

have been raised but were not. CPL 440.10(3)(b)(c)."  (*Id.*)  Though the Appellate Division

appears to have considered the merits of petitioner's fraud and perjury claims, it clearly relied on

an independent state procedural ground adequate to support the judgment: CPL §

440.10(3)(b)(c). *See Coleman*, 501 U.S. at 729 (noting that the proscription against reviewing

adequate and independent state law grounds for decision "applies whether the state law ground is

substantive or procedural").  CPL § 440.10(3)(b)(c) gives the state court discretion to deny a

motion to vacate if a defendant has made a previous motion to vacate under CPL § 440.10, and

was in a position to raise the claim in question but did not do so.  N.Y. Crim. Pro. L § 440.10.

This procedural denial is independent from federal law and adequate to support the state court's

judgment and this claim is procedurally barred and unreviewable by the Court.  *See Harris v.*

*Reed*, 489 U.S. 255, 260 (1989) ("[t]he adequate and independent state ground doctrine requires

the federal court to honor a state holding that is a sufficient basis for the state court's judgment,

even when the state court also relies on federal law.").

Linked to petitioner's argument that the People failed to connect him to the AOL account

is his claim the People presented perjured testimony by AOL fraud investigator Karen Vuckson,

a prosecution witness.  (Pet. at 14.0)[7]  Vuckson testified that someone name James Warren had

an AOL account that included the screen name "SIR631" and that the screen name

"ClarinetTweetie" was included in his "buddy list."  (Trial Tr. At 1246-50).  According to

petitioner, this "directly contradicts the records supplied" by AOL.  (Pet., Ground 3, at 14.)  This

claim was adjudicated by the Nassau County Court on the same grounds as his fraud argument

and is procedurally barred for the same reasons.

### B. Accomplice's Confession was Coerced

Petitioner also claims that Beth Loschin's confession, during which she implicated

petitioner, was the product of police coercion because it was procured after a nine hour

interrogation during which she was given no food except for candy (Loschin is apparently

diabetic).  (Pet. at 6, 11.)  Petitioner fully exhausted this claim by raising it on direct appeal and

---

[7] Petitioner raised this perjury argument in all of the same pleadings as his credit card fraud allegations, except for his first motion to vacate his conviction, in which he confined his arguments to the purported fraud. The perjury argument is sufficiently exhausted, however, because it was raised through a full round of New York's postconviction review process, namely his second motion to vacate and his application for leave to appeal the denial of that motion.

collateral review.[8]  (Appellant Br. Direct Appeal at 61, ¶9; Appl. Leave to Appeal at 10, ¶ 2; First Mot. Vacate at 2, ¶ (b); Second Mot. Vacate at 2, ¶ (h); Appl. Leave to Appeal Order Den. Second Mot. Vacate, at 3.)  *See* 28 U.S.C. § 2254(c); *Klein v. Harris*, 667 F.2d at 282.  Petitioner does not specify which of his constitutional rights this interrogation is alleged to have violated. To the extent that he alleges a Fourteenth Amendment due process claim, it is procedurally barred by the order denying his second motion to vacate, which is the last reasoned state court opinion to have adjudicated the claim.  *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991) (directing a federal court to examine the last reasoned opinion of a state court to determine whether there was an adjudication on the merits).  The Nassau County Supreme Court's adjudication of petitioner's coercion claim rested upon the same adequate and independent state law ground as the claims pertaining to petitioner's AOL account, discussed immediately above.  *See* Section III.A. Petitioner's coercion claim falls into a category of claims that are procedurally barred by CPL § 440.10(3)(b)-(c), "because they were . . . unsuccessfully raised by the defendant in his prior CPL 440.10 motion."  (Order Den. Second Mot. Vacate.)  It is therefore unreviewable by this Court. See *Harris v. Reed*, 489 U.S. at 260.

### C.  The People Changed the Accomplice's Charges Based on Her Trial Testimony

Petitioner claims that the People modified the charges brought against Ms. Loschin in exchange for her testimony against him and that "she was only testifying to obtain her minimal sentence as agreed to."  (Pet. at 12.)  He raised this claim on his appeal from the denial of leave to appeal to the Court of Appeals and his first motion to vacate his conviction pursuant to CPLR

---

[8] On direct appeal, petitioner did not raise his coercion argument as a freestanding claim, but rather by asserting that the denial of his first 440.10 motion, in which he raised coercion, was an error that deprived him of his "rights to due process and representation." (Appellant Br. Direct Appeal at 62.)  Petitioner specifically enumerated the grounds raised in the first 440.10 motion, including the claim that "the police and prosecutor used undue psychological pressure on [Ms. Loschin] to elicit statements from her." (Appellant Br. Direct Appealat 61, ¶ 2.)  This method of raising petitioner's coercion claim, though indirect, was sufficient to give the state court notice that he asserted a constitutional claim.  *See Daye v. Attorney Gen. of New York*, 696 F.2d at 194.

§ 440.10. (Letter "Re: Reconsideration," at 5; Aff. in Supp. First Mot. Vacate at 6.) He made no attempt, however, to appeal the denial of his first § 440.10 motion and did not raise this claim on his second motion to vacate or his appeal from the denial of that motion. His claim is therefore unexhausted. *See Pesina*, 913 F.2d at 53.

However, the requirement of exhaustion may be excused by the Court if requiring exhaustion would be futile. *See* 28 U.S.C. § 2254(b)(1)(B)(i) (providing a statutory exception to the exhaustion requirement where there is "an absence of available State corrective process"); *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, these remedies are technically exhausted . . . [I]f the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding."); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.").

Petitioner's claim that the People entered into a leniency bargain with his accomplice is deemed exhausted. A defendant does not have an automatic right to appeal from the denial of a CPL § 440.10 motion, and instead must seek leave to appeal to the Appellate Division. *See People v. Ramsey*, 104 A.D.2d 388 (App. Div. 1984) ("A defendant must obtain permission . . . to appeal from an order denying a motion made pursuant to CPL 440.10.) A defendant seeking to appeal such a denial must request permission to do so within thirty days after service upon the defendant of the order sought to be appealed. N.Y. Crim. Pro. L. § 460.10(4)(a). The time limit for appealing petitioner's first CPL § 440.10 motion, in which he raised the claim in question, has long passed. Because any attempt to exhaust this claim in the state courts would be futile,

this Court deems the claim exhausted and therefore procedurally barred.  *See Woodford*, 548 U.S. at 92-93.

### D. Petitioner Did Not Receive a Speedy Trial

Petitioner claims that he was denied a speedy trial because he was indicted too long after his arrest and because it "took fifteen months to get to trial," even though he "repeatedly asked for a speedy trial."  (Pet. at 13.)  This claim has never been presented to any state court and is therefore unexhausted.[9]  It is nonetheless deemed exhausted because any attempt to raise this claim to the state courts would be futile.  *See Woodford*, 548 U.S. at 92-93.   A speedy trial violation, if not raised before the commencement of trial or the entry of a plea of guilty, is unpreserved for appellate review.  N.Y. Crim. Pro. L. § 210.20(2).  *See also People v. Garcia*, 822 N.Y.S.2d 322, 324 (App. Div. 2006) (to preserve a speedy trial claim, a defendant must make a motion to dismiss the indictment on speedy trial grounds prior to trial).  In failing to make a motion to dismiss on this ground, petitioner waived this claim.  It is now deemed exhausted, procedurally barred, and unreviewable.  *See Woodford*, 548 U.S. at 92-93.

### E. Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel Brian Kelly was ineffective, on the grounds that Mr. Kelly allegedly would not allow him to testify on his own behalf or respond to media inquiries.  (Pet. at 8, 14.)  Because petitioner now raises arguments in support of his ineffectiveness claim that he has never raised before, the Court considers this claim unexhausted.

---

[9] Petitioner claims that after being incarcerated for nine months prior to trial, he submitted a pre-trial petition for habeas corpus in Nassau County  on the grounds of failure to get a speedy trial and ineffective assistance of trial counsel.  (Pet. at 7.)  The Court is not in receipt of this petition, though it is clear that one exists. The only documents in the Court's possession pertaining to state court habeas  is a decision of the Supreme Court of New York, Cortland County, dated January 29, 2008, denying petitioner's *pro se* petition for habeas corpus. This decision mentions a previous application, which is presumably the earlier state habeas petition to which petitioner now refers. (New York Sup. Ct. Order Den. Pet.)

Petitioner has repeatedly raised an ineffectiveness claim in his previous motions, but on different grounds than he now presents.  On direct appeal, petitioner's appellate counsel argued that Mr. Kelly had failed to obtain *Rosario* material from the People, waived petitioner's unspecified rights without consultation, and misrepresented the sentence that petitioner could potentially receive after trial.  (Appellant Br. Direct Appeal at 61.)  When petitioner sought leave to appeal to the Court of Appeals – both the first and the second time – he raised his ineffectiveness claim on those same grounds. (Appl. Leave to Appeal at 10-11; Letter Mot. Recons. at 1; Letter "Re: Reconsideration" at 5. ).  In petitioner's first *pro se* motion to vacate his conviction, he continued to maintain that his trial counsel was ineffective for failing to obtain *Rosario* materials and misrepresenting the maximum possible sentence petitioner could receive. (First Mot. Vacate at 3.)  When he raised his ineffectiveness claim on his second motion to vacate and his request for leave to appeal the denial of that motion, he did so on largely the same grounds (failure to obtain *Rosario* material), and added the allegation that his trial counsel had failed to objected to allegedly perjured testimony. (Notice of Second Mot. to Vacate at 2; Aff. in Supp. Second Mot. Vacate at 6,7, 9, 10; Suppl. Response to People, at 4, 9.)

The ineffectiveness claim now before this Court is different in character from petitioner's earlier claim: he does not mention his attorney's failure to obtain *Rosario* material, but rather his attorney's refusal to let him testify or communicate with the media.  (Pet. at 8, 14.)   In other words, petitioner's ineffectiveness claim was fairly presented to the state courts, both on direct appeal and collateral review, but on different grounds than are now before the Court.  His present ineffectiveness claim, therefore, is unexhausted.  *See Sanford v. Senkowski*, 791 F. Supp. 66, 68 (E.D.N.Y. 1992) (holding that in order . . . to reach the merits of petitioner's claim of ineffective assistance of counsel, all of his allegations must have been presented to the state courts, allowing

them the opportunity to consider *all* the circumstances and cumulative effect of the claims as a whole").  Because an ineffective assistance claim can "hinge on any one allegation or on the cumulative effect of all the allegations," any individual allegation of ineffectiveness must have been raised to all of the appropriate state courts in order to be reviewable by a federal court.  *Id*. By contrast, if petitioner were merely presenting supplemental evidence in support of what was fundamentally the same claim, he would not run afoul of the exhaustion requirement.  *See Vasquez v. Hillery*, 474 U.S. 254 (1986) (holding that supplemental evidence presented for the first time on federal habeas review at the direction of the District Court did not "fundamentally alter the claim already considered by the state courts").

For these reasons, petitioner's ineffective assistance of counsel claim is unexhausted.  It is, however, deemed exhausted and therefore procedurally barred.  *See Woodford*, 548 U.S. at 92-93.  If this Court were to permit petitioner to return to the state courts and attempt to exhaust this fundamentally different ineffective assistance claim, his only recourse would be to make a third motion to vacate his conviction pursuant to CPL § 440.10.  A motion to vacate on ineffectiveness grounds would fall under the mandatory dismissal provision of the statute, which provides that the state court must deny a motion to vacate a judgment when:

> Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

N.Y. Crim. Pro. L. § 440.10(2)(c).  It is clear that sufficient facts appeared on the record to have allowed petitioner to raise the specific allegations presently before the Court when he made his ineffectiveness claim on six prior occasions.  His failure to do so would warrant mandatory denial under CPL § 440.10(2)(c) if he attempted to return to the state courts and exhaust his

claim through another motion to vacate.  As petitioner has shown no cause for his failure to exhaust this specific claim, it is procedurally barred and unreviewable by this Court.

## IV.   **Petitioner's Fourth Amendment Claim is Barred by _Stone v. Powell_**

Petitioner argues for the first time in his federal petition that there was no reason for his arrest on August 1, 2001 because no one spoke to his co-defendant until August 11, 2001.  (Pet. at 5).  Though petitioner does not refer to the Fourth Amendment, this claim implicates Fourth Amendment rights and is supported by sufficient factual allegations to alert this Court to its constitutional nature.[10]  _See Brooks_, 1993 WL 350188, at *1.   This claim is unexhausted, as it has never been raised to any state court.  However, as a Fourth Amendment claim it is barred from federal habeas review.  _Stone v. Powell_, 428 U.S. 564, 493 (1976).

Claims based on the Fourth Amendment's exclusionary rules are not subject to federal habeas review where the state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim."  _Stone v. Powell_, 428 at 493 (1976).  "The focus of this standard is the word 'opportunity,' and [opportunity] means only that a state must make available a statutory mechanism for suppression of evidence tainted by an unlawful search or seizure."  _McPhail v. Warden_, 707 F. 2d 67, 69 (2d Cir. 1983).  The fact that petitioner did not in fact obtain review of his Fourth Amendment claim is immaterial.  _Id._  In the Second Circuit, there are only two

---

[10] Petitioner also makes a third claim that Respondent misconstrues as a Fourth Amendment challenge to an unlawful seizure.  (Resp. Br. at xvi, 24.)  According to petitioner, he gave the police permission to search and "inspect" the personal computers at his residence, apparently in an effort to prove his innocence.  (Pet. at 10.)  The police never "subjected [any computers]  to forensic evaluation."  (_Id._)  Respondent incorrectly argues that this is a Fourth Amendment claim of illegal seizure.  (Resp. Br. at 24.)  On the contrary, this presents no cognizable federal constitutional claim at all, as petitioner has no constitutional right to direct the course of a police investigation.  _See U.S. v. Rubin/Chambers, Dunhill Ins. Services_, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("While the Supreme Court in _Brady_ held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case.") (citation and internal quotation marks omitted); _see also Newton v. City of New York_, 566 F. Supp. 2d 256 (S.D.N.Y. 2008) (dismissing a civil rights claim arising out of an alleged failure to investigate in a criminal case, because "there is no constitutional right to an adequate investigation).

instances in which a federal court may review Fourth Amendment claims: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  It is well settled that New York complies with the requirement of providing corrective procedures.  *See McPhail*, 707 F.2d at 69;  N.Y. Crim. Proc. Law § 710.  Petitioner does not allege, nor is there any evidence on the record, that there was any breakdown in the underlying process of his conviction and appeals.  Therefore, the Court may not review petitioner's claim that there was no probable cause for his arrest.

**VI.    Petitioner's Claim that the Trial Court Excluded Exculpatory Testimony is Exhausted and Reviewable, But Denied on the Merits**

Petitioner claims that the trial court unconstitutionally erred when it refused to permit testimony from the victim and the victim's family regarding her previous sexual encounters and incidents in which she had run away from home for "sexual liaisons." (Pet. at 12.)  Petitioner argues that this testimony was relevant to the victim's state of mind and would have shown that she consented to the acts for which he was convicted.  (*Id.*)  Petitioner fully exhausted this claim on his direct appeal: he raised and fairly presented it to the Appellate Division (Appellant Br. Direct Appeal at 46-51) and to the Court of Appeals (Letter in Supp. Leave to Appeal at 6-8.) The Court of Appeals' decision on petitioner's leave to appeal was a summary denial, so the last reasoned state court opinion that adjudicated this claim is the Appellate Division's decision on petitioner's direct appeal.  *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991) (directing a federal court to examine the last reasoned opinion of a state court to determine whether there was an adjudication on the merits).

35

The Appellate Division did not explicitly address petitioner's claim that the trial court excluded exculpatory testimony, holding instead that "[t]he defendant's remaining contentions [were] either unpreserved for appellate review or without merit." *People v. Warren*, 22 A.D.3d 773, 775 (2d Dep't 2005.)  This language is insufficient as a matter of law to indicate that the state court relied on an independent state law ground adequate to support the judgment.  *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 810-811 (2d Cir. 2000) (explicitly holding that "when a state court uses language such as '[t]he defendant's remaining contentions are *either* unpreserved for appellate review *or* without merit,' the validity of the claim is preserved and is subject to federal review . . . [because] the state court has not adequately indicated that its judgment rests on a state procedural bar") (emphasis added).  The Court therefore presumes that the state court adjudicated this claim on the merits and must review the claim in the manner prescribed by AEDPA.  The deference that AEDPA commands under § 2254(d)(1) applies even to summary dispositions of a claim such as this, where the state court does not even mention the specific federal claim at issue.  *See Johnson v. Williams*, 568 U.S. __ (2013) (slip. op.) (holding when a state court opinion addresses some but not all of defendant's federal claims, there is a rebuttable presumption on federal habeas review that the state court adjudicated all federal claims on the merits").

Having reviewed petitioner's exculpatory testimony claim under the deferential standard prescribed by AEDPA, the Court finds that the judgment of the Appellate Division cannot be said to be "contrary to" or to have involved an "unreasonable application of clearly established Federal law."  28 U.S.C. § 2254(d)(1).  Nor was the judgment "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "clearly established federal law" in question is a criminal defendant's

Sixth Amendment right to confront the witnesses against him.  *See Davis v. Alaska*, 415 U.S.

308, at 315 (1974) ("The Sixth Amendment to the Constitution guarantees the right of an

accused in a criminal prosecution to be confronted with the witnesses against him.")  The

primary purpose of the right of confrontation is cross-examination.  *Id.*  Petitioner argues that

several exclusions at trial denied him this essential right to cross-examine the witnesses against

him.

  When Mr. Kelly attempted to question the victim about her psychiatric history leading up

to the crimes committed against her, the prosecutor objected and the court sustained that

objection.  (Trial Tr. At 984.)  Mr. Kelly argued that testimony as to the victim's "psychiatric

problems" was relevant to her state of mind and therefore to her consent, or lack thereof, to the

crimes alleged.  (Trial Tr. at 984-985.)  The court explained:

> This witness on this witness stand is a crime victim . . . I will not let you go – whether
> you find it relevant or not – I will not let you go into psychological motivations of the
> victim of this crime to have engaged in certain actions . . . She has certain unique rights.
> She is a minor, and she is a crime victim. And I'm just not going to let you delve that
> deeply into her background . . . She's not an accomplice. She's a victim.

(Trial Tr. at 985-986.)  When Mr. Kelly subsequently attempted to ask the victim about her

previous experiences in sadomasochistic chat rooms, the Court excluded this testimony for the

same reason.  (Trial Tr. at 997-98.)  The court also refused to allow Mr. Kelly to question the

victim's mother about previous instances in which the victim may have left home.  (Trial Tr. at

928-929.)  Petitioner argued on appeal that these exclusions precluded him from demonstrating

that the victim went with him voluntarily and consented to sex, and therefore that he was not

guilty of the charges of kidnapping or rape.  (Appellant Br. Direct Appeal at 51.)

  The trial court was well within its rights to exclude the testimony in question.  To begin

with, the constitutional right of a criminal defendant to cross-examine witnesses against him is

not unlimited.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *People v. Standard*, 42 N.Y.2d 74, 83 (Ct. App. 1977).  A trial court has broad discretion to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679.  A trial court's concerns as to the psychological welfare of a minor crime victim present a legitimate reason to restrict the cross-examination of that victim.  *See, e.g. US v. Griffith*, 284 F.3d 338 (2d Cir. 2002) (finding no abuse of discretion when a district court limited testimony of a minor regarding her sexual history).

The victim was fifteen years old when the crimes occurred and was therefore legally incapable of consenting to accompany Warren.  Testimony that she voluntarily accompanied Warren would have been irrelevant and unnecessary to prove or disprove the elements of first-degree kidnapping.  *See* N.Y. Penal Law § 135.00 (providing that a person is moved or confined without consent "if he is a child less than sixteen years old . . . and the parent, guardian, or other person having lawful control or custody of him has not acquiesced in the movement or confinement").  The same goes for the elements of rape in the third degree.  *See* N.Y. Penal Law § 130.25(2) (providing that a person over the age of twenty-one is guilty of third degree rape when he engages in sexual intercourse with another person under the age of seventeen).  The trial court properly excluded evidence that would have exposed a sixteen-year old complaining witness to an irrelevant and unpleasant inquiry into her psychological motivations.

With respect to the first degree charges of rape and sodomy, which do require evidence of compulsion, testimony regarding the victim's consent to the charged conduct would certainly be relevant.  *See* N.Y. Penal Law §§ 130.35(1), 130.50(2); Unif. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of a fact that is of

38

consequence to the determination of the action more probable or less probable than it would be without the evidence").  However, the trial court did not preclude Warren's counsel from eliciting testimony from the victim that was relevant to the issue of consent – far more relevant, in fact, than the excluded testimony would have been.  For example, the court overruled the People's objections to Mr. Kelly's inquiries as to whether the victim ever indicated that she was interested in or willing to have sadomasochistic sex during her online conversations with SIR361 (Trial Tr. at 1004.)  The court also allowed Mr. Kelly to cross-examine the victim at length as to whether she ever told her attackers to stop or asked to go home.  (Tr. Trans. at 1016, 1034, 1035, 1044, 1045, 1050, 1058).  Even with the extensive cross-examination on issues of consent that the court permitted, the jury was still convinced beyond a reasonable doubt that petitioner was guilty of the forcible sex crimes.

Accordingly, the Appellate Division did not err when it found that petitioner's claim that the trial court excluded exculpatory testimony was either unpreserved or without merit.  *People v. Warren*, 22 A.D.3d at 775.  Its decision was not contrary to or an unreasonable application of Supreme Court precedent pertaining to the Sixth Amendment right of confrontation, and therefore this Court may not grant petitioner's habeas petition with respect to this claim.  28 U.S.C. § 2254(d)(2).

## CONCLUSION

Accordingly, it is hereby ORDERED that petitioner's habeas corpus petition is DENIED in its entirety, and his petition is DISMISSED.  The Clerk of Court is directed to dismiss this petition, enter Judgment accordingly, send a copy of the Judgment and this Memorandum and Order to petitioner, and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962).

                                        SO ORDERED.


Dated: Brooklyn, New York                    *Roslynn R. Mauskopf*
        March 28, 2013                    _____
                                        ROSLYNN R. MAUSKOPF
                                        United States District Judge